IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COMCAST OF ILLINOIS X, LLC, an Illinois Limited Liability Company, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 03 C 5407 ) |
| EXPLORER ELECTRONICS, INC., an Indiana corporation, et al., | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

Before the court are three motions. For the reasons stated below, the motion of Explorer Electronics, Inc., John Garcia, and Juan Garcia to vacate the entry of default is denied; the motion of Internet Traffic Pros, Inc. and Carlos Garcia to vacate the entry of default is granted in part and denied in part; and the motion of Internet Traffic Pros, Inc. and Carlos Garcia to consolidate this action with another case is denied.

## BACKGROUND

Plaintiff, Comcast of Illinois X, LLC ("Comcast"), a cable television company, brings this action against defendants Explorer Electronics, Inc. ("Explorer"), John Garcia, Juan Garcia, Internet Traffic Pros, Inc. ("ITP"), Carlos Garcia, Mexi Telecom

Specialists, Inc. ("Mexi Telecom"), and Rogaciano Morales.[1] For convenience, we will refer to the Garcias by their first names. Comcast alleges that defendants engaged in a scheme to sell or distribute "pirate" cable television descrambling equipment.

On August 5, 2003, Comcast filed its original complaint, against only Explorer and John, and served those defendants the following day. Comcast issued numerous third-party subpoenas for bank records and other documents and then determined that it wished to add more defendants. On February 20, 2004, Comcast filed its "Second Amended Complaint" (even though there was no "First Amended Complaint"), which added as defendants Juan, ITP, Carlos, Mexi Telecom, and Rogaciano Morales. It is Comcast's position that it properly served all of the additional defendants with summons and the Second Amended Complaint. (As discussed below, Carlos and ITP dispute that contention.)

The second amended complaint contains the following claims: violation of the Cable Communications Policy Act, 47 U.S.C. § 553 (Count I); violation of the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201(a)(2) and 1201(b)(1) (Counts II and III); unjust enrichment (Count IV); and civil conspiracy (Count VI). Plaintiff also seeks the imposition of a constructive trust (Count V).

---

[1] According to plaintiff, John Garcia and Carlos Garcia are brothers, and Juan Garcia is their father.

After Comcast filed the Second Amended Complaint, there was little activity on the docket. Defendants Mexi Telecom and Rogaciano Morales filed a motion to dismiss on March 19, 2004, which was later withdrawn. On March 31, 2004, the date that the motion to dismiss was noticed, attorney Joseph R. Mitchell (who does not represent Mexi Telecom or Rogaciano Morales) appeared in court and indicated that he would be filing an appearance and an answer for defendants Explorer, John, and Juan within fourteen days. On April 23, 2004, Mr. Mitchell entered an appearance for those defendants, but did not file an answer or responsive pleading. On May 14, 2004, Comcast filed a motion for default judgment against Explorer, ITP, and the Garcias and noticed the motion for May 19.

On May 19, counsel for Comcast appeared, but no one appeared for Explorer, ITP, or the Garcias. Accordingly, we entered default against those defendants and set the case for a prove-up hearing on June 23, 2004. On June 9, 2004, Mr. Mitchell filed a motion to vacate the default against Explorer, John, and Juan. The motion was briefed. Thereafter, on August 5, 2004, defendants ITP and Carlos filed a separate motion to vacate the default, and an attorney filed an appearance on their behalf shortly thereafter. That motion has now been fully briefed. In addition, ITP and Carlos move to consolidate this action with another case pending in this district.

**DISCUSSION**

**A.  Default**

Federal Rule of Civil Procedure 55(c) provides: "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)."  Here, we granted plaintiff's "motion for default judgment," but did not enter default *judgment*; instead, we entered default and set a prove-up hearing date for the default judgment.  Before the date of the prove-up, Explorer, John, and Juan filed their motion to vacate, and much later, ITP and Carlos filed their separate motion.  In order to vacate an entry of default, the moving party must show (1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the plaintiff's complaint.  See Pretzel & Stouffer v. Imperial Adjusters, Inc., 28 F.3d 42, 45 (7th Cir. 1994).

**1.  Motion of Explorer, John Garcia, and Juan Garcia**

Although the motion of Explorer, John, and Juan was filed within three weeks of the default order and within two weeks of when defendants' counsel learned of the order, arguably quickly enough to constitute "quick action," it nonetheless fails to demonstrate good cause or a meritorious defense.

**a.  Good Cause**

There are two aspects of the good-cause analysis here: (1) counsel's failure to file an answer or responsive pleading to the

Second Amended Complaint; and (2) counsel's failure to appear at the hearing on plaintiff's motion for default. Regarding the failure to file an answer or responsive pleading, defendants' motion states: "Defendant's [sic] Attorney is a sole practiconer [sic] and because of his work schedule did not have time to prepare an answer to the Plaintiff's Amended Complaint." (Motion to Vacate Default at 1.) This explanation--which amounts to simple neglect--does not constitute good cause. See Pretzel & Stouffer, 28 F.3d at 45 (stating that the solution to such difficulties is "emphatically not to ignore filing deadlines" and that counsel can request more time to answer if he is having difficulties). It is noteworthy that although Mr. Mitchell, defendants' counsel, represented to the court that he would file an answer or responsive pleading by April 14, 2004, by *May* 14 (the date when plaintiff's motion was filed), he still had not even moved for an extension of time or sought leave to file an untimely pleading. As plaintiff points out, such a motion would have taken counsel very little time to prepare.

As for his failure to appear at the hearing on plaintiff's motion for default, Mr. Mitchell offers the following (unsworn) explanation. On May 18, the day before the hearing on the default motion, he contacted the office of Comcast's attorney, Jeffrey Platt, who was not in the office. When Mr. Mitchell asked to speak with another attorney who was handling this matter, he was transferred to "a person," whose name is not provided, whom he

believed was an attorney. Mr. Mitchell informed this person that he could not attend the hearing on the default motion because he had to present an emergency motion for an order of protection in state court. According to Mr. Mitchell, he "requested that an order be entered in this case giving him 21 days to respond" to the complaint. He recalls that the person's response was "I don't see that that's a problem." (Motion to Vacate, ¶ 3; Reply, ¶ 3.) It was Mr. Mitchell's "understanding that the motion for Default Judgment would be continued and that [he] would be given 21 days to answer the complaint." (Motion to Vacate, ¶ 3.) Plaintiff, on the other hand, states that its counsel never agreed to an extension of time to answer the complaint beyond the 14-day period ending on April 14, 2004.

Regardless of whether plaintiff's counsel did or did not agree to a further extension of time for defendants to answer, it does not automatically follow that the court would have granted that extension, especially where defendants had a history of failing to meet deadlines. Mr. Mitchell does not state that he contacted chambers or our courtroom deputy to inform us of his conflict, either before or shortly after the motion call on May 19. Nor, evidently, did he check the court docket to learn of the disposition of the motion (he states that he did not learn of it until May 26 upon receipt of the court's minute order). Considering these circumstances, we do not believe that defendants

have shown good cause for counsel's failure to appear at the motion hearing.

**b.** **Meritorious Defense**

In addition to failing to demonstrate good cause, defendants fail to demonstrate a meritorious defense. "A meritorious defense is not necessarily one which must, beyond a doubt, succeed in defeating a default judgment, but rather one which at least raises a serious question regarding the propriety of a default judgment and which is supported by a developed legal and factual basis." Jones v. Phipps, 39 F.3d 158, 167 (7th Cir. 1994). A "meritorious defense" showing requires more than bare legal conclusions; rather, a defendant must establish that it has a specific defense on the merits. See Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc., 687 F.2d 182, 186 (7th Cir. 1982).

Defendants' motion contains one sentence relevant to this determination: "The Defendants have meritorious defense to the merits of Plaintiff's Amended Complaint." (Motion to Vacate at 2.) In their reply, defendants refer to a different case pending before the court that involves the same plaintiff and one of the same defendants, Juan Garcia. Defendants point out that plaintiff's motion for summary judgment against Juan in that case was denied and contend, without elaboration, that "[t]he fact situation in [that] case and the present case are very similar." (Reply at 2-3.) Defendants also argue that "there can only be a general

denial" because the Second Amended Complaint does not include specific times, places, or dates of the alleged wrongdoing or contain any evidence. (Reply at 3.)

This is insufficient to meet the "meritorious defense" requirement. Whether summary judgment against Juan was denied in a different proceeding is neither here nor there, especially for the purposes of determining whether Explorer and John have a meritorious defense. Furthermore, defendants do not explain in what relevant way the two cases are similar. As for defendants' second argument, it is a basic principle of federal notice pleading that it is unnecessary for the Second Amended Complaint to contain either evidence or allegations of "specific times, places, or dates." The Second Amended Complaint puts defendants on notice of the claims against them, which are all based on the allegation that they schemed to distribute pirate cable television descrambling equipment. Defendants wholly fail to indicate that they have a specific defense to the merits of plaintiff's claims.

Because defendants Explorer, John Garcia, and Juan Garcia have failed to show good cause or a meritorious defense, their motion to vacate the entry of default will be denied.

### 2. **Motion of ITP and Carlos Garcia**

As stated supra, defendants ITP and Carlos Garcia filed a separate motion to vacate the entry of default. Their motion was filed on August 5, 2004, almost three months after the default.

Counsel for ITP and Carlos states that he did not learn of the default until August 3, 2004, when he was talking to plaintiff's counsel about another case involving plaintiff, ITP, and Carlos that is pending in this district before Judge Der-Yeghiayan. We will assume, without deciding, that defendants' counsel took "quick action" to file the motion to vacate the default. Nevertheless, like Explorer, John, and Juan, ITP and Carlos fail to demonstrate either good cause for the default or that they have a meritorious defense.

    a. **<u>Good Cause</u>**

ITP and Carlos contend that there was good cause for the default for essentially two reasons: (1) there was improper service of process on them; and (2) plaintiff's claims are barred by the doctrine against claim-splitting because the case before Judge Der-Yeghiayan is virtually identical.

Attached to defendants' memorandum is the Declaration of Carlos Garcia, which states in relevant part:

> 2. In the early morning hours of March 4, 2004, I was at my residence of 14815 Oak Creek Court, Orland Park, IL. The residence is a single family house. It is owned by my father, Juan Garcia.
> 3. Early in the morning I heard the doorbell ring. I did not answer the door because it was very early. However, I do not recall the exact time that the doorbell rang.
> 4. At approximately 8:00 a.m. I walked outside towards my father's vehicle. The vehicle was parked in a private driveway to the house. The front of the car was facing the house. The rear of the car was facing the street.
> 5. In reverse, I began to back out of the driveway. As I was driving, I saw an unknown man approach the vehicle

>from the rear. I proceeded to back out of the driveway. As I drove past the unknown man, he threw something at my vehicle that looked like a stack of papers.
>6. The object that the man threw at my vehicle fell to the ground on Oak Creek Court.
>7. When I returned home, I did not see any stack of paper in the street.
>8. There were no documents attached or left at my home.
>9. I have not received any documents regarding this case in the mail.
>. . .
>12. I am a party to another litigation with the Plaintiff, Comcast of Illinois. . . .
>13. On or about August 3, 2004, my attorney, Rich Leng, called me by telephone. In that conversation he informed me that in May 2004, Plaintiff had obtained a default judgment against me for essentially the same claims as the other lawsuit. Prior to that occasion, I did not know of the existence of the other litigation. That was the first time that I had discussed the matter with my attorney.

(Declaration of Carlos Garcia, Ex. 5 to Defendants' Memorandum.)

Under Federal Rule of Civil Procedure 4(e), service on an individual may be effected according to the law of the state in which the district court sits. Illinois law provides that service of a summons upon an individual can be made by leaving a copy of the summons with the defendant personally. 735 ILCS 5/2-203(a). Plaintiff asserts that it properly served Carlos (and ITP, by serving Carlos, an officer of ITP) with summons and the Second Amended Complaint on March 4. On March 10, 2004, plaintiff filed an Affidavit of Service on Carlos Garcia, signed by the process server, Adan Fragoso. Moreover, attached to plaintiff's response to defendants' motion is Fragoso's Affidavit, which states in relevant part:

    6. On March 4, 2004 at approximately 7:30 A.M. I arrived at the residence of Carlos Garcia located at 14815 Oak Creek Court, Orland Park, IL 60467. Shortly thereafter I approached the residence and rang the front door doorbell several times. I could see people moving in the house through clear glass in the door, but no one would answer the door. There was a Black Cadillac Escalade, license plate # 563 9429 parked on the driveway at that time, so I took a picture of the vehicle, and a picture of the license plate of the vehicle.
    7. As the individuals at Carlos Garcia's residence were refusing to come to the door I waited in my vehicle to the Northwest of the residence around the curve of the cul-de-sac. My vehicle was facing Carlos Garcia's residence, with the garage, driveway, and front door in sight. I sat in my vehicle for approximately forty-five(45) to fifty (50) minutes conducting surveillance of the 14815 Oak Creek Court address.
    8. At approximately 8:20 A.M. I noticed a Hispanic male exit the residence at this address and head towards a Black Cadillac Escalade, license plate # 563 9429. I approached the Black Cadillac Escalade, identified myself and asked the man approaching the car if he was Carlos Garcia. The man acted very evasive and claimed that he was not Carlos Garcia. I then asked the man who he was and he refused to speak further with me.
    9. At that time I posted a copy of the Summons and Complaint for this case under the windshield wiper on the windshield of the Black Cadillac Escalade and informed this man that I was serving him with a Summons and Complaint for a lawsuit in which Carlos Garcia was a Defendant. The man then backed out of his driveway and sped off in the Black Cadillac Escalade with the Summons and Complaint under the windshield wiper on his windshield.

(Affidavit of Adan Fragoso, Ex. F to Plaintiff's Response.)

It is well-established that an signed affidavit of service is prima facie evidence that service was properly executed. See O'Brien v. R.J. O'Brien & Assocs., 998 F.2d 1394, 1398 (7th Cir. 1993); Paul v. Ware, 630 N.E.2d 955, 958 (Ill. App. Ct. 1994). Such an affidavit can be overcome only by "strong and convincing

evidence" of defective service.  O'Brien, 998 F.2d at 1398; Winning Moves, Inc. v. Hi! Baby, Inc., 605 N.E.2d 1026, 1029 (Ill. App. Ct. 1992).  Furthermore, an "uncorroborated defendant's affidavit merely stating that he [has] not been personally served with summons is insufficient to overcome the presumption favoring the affidavit of service."  Paul, 630 N.E.2d at 948; see also Winning Moves, 605 N.E.2d at 1029-30 (noting that "[u]ncorroborated testimony of the party upon whom service purports to have been made is not considered clear and convincing evidence").

All that defendants offer is the uncorroborated Declaration of Carlos Garcia, which is wholly inadequate to carry their burden as a matter of law.  To boot, the Declaration is not believable, to the extent that it varies from Mr. Fragoso's story.  Interestingly, Mr. Garcia does not argue that service was affected upon the wrong person.  Instead, he admits that he *was* the person confronted by Mr. Fragoso, and it is clear even from *Mr. Garcia's* version of the story that he was attempting to evade service.  A simple docket search reveals that Mr. Garcia is no stranger to litigation; we think that he is well aware of what personal service of process entails.  In short, we simply do not find his version of the story to be credible.  In addition, we are skeptical of Mr. Garcia's assertion that he did not know of this litigation, considering that he evidently lived with his father at the time, who had been served with process months earlier.

It is well-settled that Illinois law does not favor those who seek to evade service of summons. See Edward Hines Lumber Co. v. Smith, 172 N.E.2d 429, 432 (Ill. App. Ct. 1961). No requirement exists that a process server physically place the papers in a defendant's hand. With recalcitrant defendants, it is sufficient that the papers be placed "in the general vicinity of the person to be served and announcing the nature of the papers." Freund Equip., Inc. v. Fox, 703 N.E.2d 542, 545-46 (Ill. App. Ct. 1998). Mr. Garcia resisted service by failing to answer the door, lying about his identity, and refusing to accept the papers. According to Mr. Fragoso, whose affidavit we find credible, he placed the papers on the car's windshield--in Mr. Garcia's general vicinity--and stated the nature of the papers. Mr. Garcia chose not to take those papers or take them off the windshield before he drove away. Accordingly, we find that Mr. Garcia was properly served.

Defendants argue that service on ITP (the company of which Mr. Garcia is president) was improper because Mr. Fragoso was required to serve Mr. Garcia with two copies of the summons and the complaint--one for Mr. Garcia and one for ITP--and Mr. Fragoso's affidavit does not state that he did so. Although a summons was issued for ITP, no return of service of summons on ITP (as opposed to Mr. Garcia) was filed in this case. It is unclear if the summons for ITP was served on Mr. Garcia along with his summons, but it appears that this was not done. Mr. Fragoso's affidavit is

silent as to service on ITP and implies that only Mr. Garcia individually was served with summons.

In order for a court to assert personal jurisdiction over a defendant, valid service of process must occur first. See <u>Mid-Continent Wood Prods., Inc. v. Harris</u>, 936 F.2d 297, 301 (7th Cir.1991). Without valid service of process, therefore, a default judgment is void. See id. Although no judgment has been rendered against ITP, the principles applicable to the default judgment situation seem equally applicable to cases involving an entry of default, and plaintiff cites no cases to the contrary. (In fact, plaintiff does not address the argument regarding the lack of a return of service of summons for ITP at all.) Therefore, because it does not appear that service was effected or even attempted to be effected on ITP, we did not have jurisdiction over ITP, and the entry of default against it must be vacated. Plaintiff should promptly serve ITP with summons and the Second Amended Complaint if it still wishes to pursue its claims against ITP.

Defendants also raise the doctrine of "claim-splitting," arguing that the instant case is identical to the case pending before Judge Der-Yeghiayan, <u>Comcast of Illinois X, LLC v. Hightech Electronics, Inc.</u>, 03 C 3231. This argument seems to be irrelevant to the determination of whether there was "good cause" for the default. However, we will address it anyway because defendants raise the same issue in their motion for consolidation.

While it is true that Comcast is the plaintiff in both cases and Carlos Garcia and Internet Traffic Pros are defendants in both cases, there are additional defendants in each case who are not parties in the other case. The instant case is based primarily on the alleged activities of Explorer in selling or distributing "pirate" devices, while the other case is based primarily on ITP's alleged "linking" of potential customers, through an internet web site, to companies selling pirate devices. The cases do not involve largely the same factual issues or the same injury, and thus it does not appear that the cases are duplicative. Therefore, defendants' claim-splitting argument is rejected.

    **b.** **<u>Meritorious Defense</u>**

Carlos Garcia also fails to demonstrate that he has a meritorious defense. Defendants first refer to the disposition of the case before Judge Der-Yeghiayan, where certain claims were dismissed with leave to amend. The court's rulings in that action are not relevant to whether defendants have a defense to this action.

Defendants also contend that they have "two additional significant defenses": lack of service and lack of personal jurisdiction. We have already addressed the service issue, see <u>supra</u>, and as for personal jurisdiction, the argument is wholly undeveloped. Defendants also refer in their reply to "substantive

and meaningful defenses" without specifying what those defenses are. (References to the 03 C 3231 action, again, are irrelevant.)

Because Carlos Garcia has failed to show good cause or a meritorious defense, the motion to vacate the entry of default will be denied as to him. The motion will be granted as to ITP because plaintiff has not demonstrated that ITP was served with process.

**B.   Consolidation**

Defendants ITP and Carlos Garcia also move to consolidate this action with the aforementioned case pending before Judge Der-Yeghiayan. Local Rule 40.4 governs reassignment of related cases. It contemplates that a motion for reassignment be brought before the judge before whom the lowest-numbered case of the claimed related set is pending. Judge Der-Yeghiayan's case is a lower number. Additionally, the Rule defines "related" cases as those which, <u>inter alia</u>, grow out of the same transaction or occurrence. As explained <u>supra</u>, it does not appear that the cases at issue satisfy this requirement. Defendants' motion to "consolidate" is therefore denied.

## CONCLUSION

Defendants Explorer, John Garcia, and Juan Garcia's motion to vacate the entry of default is denied. Defendants Internet Traffic Pros, Inc., and Carlos Garcia's motion to vacate the entry of default is granted in part and denied in part; the entry of default is vacated as against Internet Traffic Pros, Inc. but not as to

Carlos Garcia. Defendants Internet Traffic Pros, Inc. and Carlos Garcia's motion to consolidate this action with another case is denied.

The case is set for a prove-up hearing on February 9, 2005, at 11:00 a.m. as to defendants Explorer, John Garcia, Juan Garcia, and Carlos Garcia.

DATE:     January 26, 2005

ENTER:    _____

          John F. Grady, United States District Judge