**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

COMCAST OF ILLINOIS X, LLC,        )
an Illinois Limited Liability      )
Company,                           )
                                   )
          Plaintiff,               )
                                   )
          v.                       )     No. 03 C 5407
                                   )
EXPLORER ELECTRONICS, INC., an     )
Indiana corporation, et al.,       )
                                   )
          Defendants.              )

**MEMORANDUM OPINION**

Before the court are two motions.  For the reasons explained below, the motion of Carlos Garcia for reconsideration of our order of January 26, 2005 is denied, and the motion of Internet Traffic Pros, Inc. to dismiss the Second Amended Complaint is denied in part and granted in part.

**BACKGROUND**

We briefly outlined the facts of this case in our Memorandum Opinion of January 26, 2005:

> Plaintiff, Comcast of Illinois X, LLC ("Comcast"), a cable television company, brings this action against defendants Explorer Electronics, Inc. ("Explorer"), John Garcia, Juan Garcia, Internet Traffic Pros, Inc. ("ITP"), Carlos Garcia, Mexi Telecom Specialists, Inc. ("Mexi Telecom"), and Rogaciano Morales.[1]  For convenience, we

---

[1] According to plaintiff, John Garcia and Carlos Garcia are brothers, and Juan Garcia is their father.

> will refer to the Garcias by their first names. Comcast
> alleges that defendants engaged in a scheme to sell or
> distribute "pirate" cable television descrambling
> equipment.
> . . .
> The second amended complaint contains the following
> claims: violation of the Cable Communications Policy Act,
> 47 U.S.C. § 553 (Count I); violation of the Digital
> Millennium Copyright Act, 17 U.S.C. §§ 1201(a)(2) and
> 1201(b)(1) (Counts II and III); unjust enrichment (Count
> IV); and civil conspiracy (Count VI). Plaintiff also
> seeks the imposition of a constructive trust (Count V).
> . . .
> On May 19, . . .we entered default against [Explorer,
> ITP, and the Garcias] and set the case for a prove-up
> hearing on June 23, 2004.

(Memorandum Opinion of January 26, 2005, at 1-3.) Explorer, ITP,

and the Garcias moved to vacate the default; we denied the motions

as to Explorer and the Garcias, but granted the motion as to ITP.

Thereafter, we denied Juan Garcia's motion for reconsideration

of our ruling on the motion to vacate the default. Comcast settled

with defendants Mexi Telecom and Rogaciano Morales, and those

defendants have been dismissed with prejudice. Comcast has served

ITP with summons and the Second Amended Complaint, and ITP now

moves to dismiss the Second Amended Complaint. In addition, Carlos

Garcia now moves for reconsideration of our ruling on the motion to

vacate the default.

## DISCUSSION

### A. Carlos Garcia's Motion for Reconsideration

We previously denied Carlos Garcia's motion to vacate the

default because he failed to demonstrate good cause for the default

or a meritorious defense. As with Juan Garcia's motion to reconsider our decision, Carlos Garcia's motion to reconsider is a second bite at the apple. Despite his misleading reference to "new defenses" that are "based upon developments in this case," the motion is merely an expansion of the arguments he made before. And as we noted in the minute order denying Juan Garcia's motion to reconsider, Rule 59(e) does not allow a party to advance arguments that could and should have been presented to the court previously. See Moro v. Shell Oil Co., 91 F.3d 872, 876 (7th Cir. 1996).

We reject Carlos Garcia's contention that we should closely examine his defenses in a separate case pending in this district, Comcast of Illinois X, LLC v. Hightech Electronics, Inc., 03 C 3231 ("Hightech"). Again, it does not appear that the claims in the two cases arise from the same set of operative facts. Moreover, as explained infra, we interpret the language of the Cable Communications Act, 47 U.S.C. § 553, differently from the court in Hightech. Furthermore, we do not believe that we "overlooked corroboration" of Carlos Garcia's Declaration; we do not consider the fact that Mr. Garcia has defended himself in other cases to be relevant to his credibility regarding the events surrounding his service in this case. As we pointed out earlier, it is clear even from Mr. Garcia's version of events that he was attempting to evade service. Mr. Garcia's remaining arguments are without merit. The motion for reconsideration is therefore denied.

**B.**   **ITP's Motion to Dismiss**

ITP moves to dismiss the Second Amended Complaint pursuant to Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure.

**1.**   **Rule 8(a)**

ITP argues that Comcast has not complied with Rule 8(a), which requires that a pleading contain "a short and plain statement of the grounds upon which the court's jurisdiction depends."   ITP is correct that a complaint must identify the court's basis for jurisdiction and that the Second Amended Complaint does not include a jurisdictional statement.   It is clear, however, that some of plaintiff's claims arise under federal law and that our jurisdiction is proper.   Therefore, we will not dismiss the Second Amended Complaint, but we will give plaintiff leave to file a Third Amended Complaint that contains a proper jurisdictional statement.

**2.**   **Rule 12(b)(6)**

**a.**   **Cable Communications Act (Count I)**

Comcast alleges in Count I that defendants violated the Cable Communications Act (the "CCA"), 47 U.S.C. § 553(a), which provides in pertinent part:

> (1) No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.
> (2) For the purpose of this section, the term "assist in intercepting or receiving" shall include the manufacture or distribution of equipment intended by the manufacturer or distributor (as the case may be) for

> unauthorized reception of any communications service
> offered over a cable system in violation of subparagraph
> (1).

47 U.S.C. § 553(a)(1), (2).  According to ITP, plaintiff merely

alleges that ITP was paid by Explorer and John Garcia "for illegal

cable descrambler leads and/or for driving internet traffic to"

Explorer and John Garcia's web site.  (Second Amended Complaint, ¶

28.)  ITP contends that by the plain language of the statute,

providing sales leads and driving internet customers to a web site

does not constitute "assistance" in intercepting or receiving

unauthorized cable service.

We disagree.  First of all, the web site marketing is not the

only conduct alleged with respect to ITP as a basis for Count I.

Plaintiff also alleges that defendants, including ITP, were engaged

in a scheme to illegally sell or distribute cable descrambling

equipment and that defendants did sell or distribute such

equipment.  (Second Amended Complaint, ¶¶ 23-25.)  ITP argues that

plaintiff "has not alleged any facts to substantiate" these claims

against ITP, but under the liberal federal system of notice

pleading, plaintiff is not required to do so.[2]

Furthermore, we are unpersuaded by ITP's interpretation of the

CCA.  Section 553(a) prohibits "assist[ance] in intercepting or

---

[2] For the same reason, ITP's contention that plaintiff's allegations regarding specific intent are "completely devoid of any factual basis" fails. ITP's brief strays into arguing facts, which of course is inappropriate on a motion to dismiss.

receiving" unauthorized cable service, and the statute further
provides that assistance *includes* the manufacture or distribution
of cable descrambling equipment. Contrary to ITP's argument, the
statute does not define assistance as *exclusively* the manufacture
or distribution of this equipment. Part of plaintiff's theory of
recovery is that ITP "assisted" in the interception or reception of
unauthorized cable service by accepting payment for driving
internet traffic to web sites that were selling descrambling
equipment. We do not believe that this theory of recovery is
foreclosed by the language of the statute, given the use of the
phrase "shall include" in § 553(a)(2) instead of an exhaustive
definition.

ITP contends that "[i]f Plaintiff's theory of recovery was
correct, Plaintiff would have a cause of action against every major
search engine on the Internet, including Yahoo, Google, and MSN,
because those website [sic] may also increase traffic at websites
where cable descramblers are sold," citing in support Hightech,
2004 WL 1718522, at *3 (N.D. Ill. July 29, 2004). (Motion to
Dismiss at 3-4.) We respectfully decline to follow Hightech on
this issue. Plaintiff's theory is not that ITP merely contributed
to an increase in traffic at the other defendants' web sites that
sold descrambling equipment, but that ITP was compensated for
linking its web site visitors to defendants' web sites, and that
this constituted "assistance" in intercepting or receiving

unauthorized cable service. ITP can be distinguished from Yahoo!, Google, and MSN because it is not a search engine: it is alleged to have accepted payments for actively placing a link on its web site linking customers to defendants' web sites, knowing that if visitors clicked on the link they would arrive at defendants' web sites where they could purchase cable-piracy devices, and not merely to have facilitated visits to those sites as a passive vehicle or search engine.

ITP's motion to dismiss will be denied as to Count I.

      **b.**   **Digital Millennium Copyright Act (Counts II & III)**

In Counts II and III, Comcast alleges that defendants have violated § 1201(a)(2) and (b)(1) of the Digital Millennium Copyright Act ("DMCA"), a statute that "serves as a means to better protect copyright in the digital age." <u>Chamberlain Group, Inc. v. Skylink Techs., Inc.</u>, 292 F. Supp. 2d 1040, 1043 (N.D. Ill. 2003). The DMCA states in relevant part:

> (a) **Violations regarding circumvention of technological measures**. . . .
> . . .
> (2) No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that—
>     (A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title;
>     (B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title; or

(C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under this title.
. . .
(3) As used in this subsection—

(A) to "circumvent a technological measure" means to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner; and

(B) a technological measure "effectively controls access to a work" if the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work.

(b) **Additional violations.**--

(1) No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that—

(A) is primarily designed or produced for the purpose of circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof;

(B) has only limited commercially significant purpose or use other than to circumvent protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof; or

(C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof.

(2) As used in this subsection—

(A) to "circumvent protection afforded by a technological measure" means avoiding, bypassing, removing, deactivating, or otherwise impairing a technological measure; and

(B) a technological measure "effectively protects a right of a copyright owner under this title" if the measure, in the ordinary course of its operation,

prevents, restricts, or otherwise limits the exercise of
a right of a copyright owner under this title.

17 U.S.C. § 1201(a)(2) & (3), (b)(1) & (2). The DMCA provides that

"[a]ny person injured" by a violation of § 1201 may bring a civil

action for damages. 17 U.S.C. § 1203.

ITP asserts that Comcast has no standing to bring Counts II

and III because the DMCA is designed to protect copyright owners

and Comcast is not alleged to be a copyright holder in the

television programs on the networks provided to cable customers.

ITP cites no case law in support of this argument. We are

unpersuaded. The DMCA expressly provides that *any person* injured

by a violation of § 1201 may bring suit and does not restrict

recovery to copyright owners only. Comcast alleges that it has

been injured by a violation of § 1201--ITP's sale or distribution

of cable-piracy devices. Therefore, plaintiff has standing to

bring DMCA claims.

ITP further argues that even if Comcast has standing, Comcast

has failed to state DMCA claims because such a claim cannot be

based merely on "providing sales leads or driving internet traffic"

and to the extent that plaintiff's claims are based on the sale or

distribution of piracy devices, "[p]laintiff has not alleged any

facts (short of legal conclusions) that indicate that [ITP]

manufactures, imports, sells, provides, or traffics in technology

circumvention devices." (Motion to Dismiss at 7-8.) Again, as we

indicated <u>supra</u>, under the liberal federal system of notice pleading, plaintiff is not required to plead elaborate facts. We also reject ITP's argument that "driving internet traffic" cannot constitute a DMCA violation. The statute prohibits "offer[ing] to the public, provid[ing], or otherwise traffic[king]" in devices that, <u>inter alia</u>, are "marketed by that person or another acting in concert with that person with that person's knowledge for use in" piracy. 17 U.S.C. § 1201(a)(2). Accepting compensation for maintaining a link on one's web site to a web site that offers such devices for sale, as ITP is alleged to have done, falls within this statutorily prohibited conduct. <u>See</u> <u>Universal City Studios, Inc. v. Reimerdes</u>, 111 F. Supp. 2d 294, 325 (S.D.N.Y. 2000) (holding that it was a violation of the DMCA to post hyperlinks to web sites offering decryption software).[3] Accordingly, ITP's motion to dismiss will be denied as to Counts II and III. Because we will not dismiss all of plaintiff's federal claims, we need not address ITP's argument that we should not exercise supplemental jurisdiction over the state claims. Nor need we address ITP's contention that because plaintiff has failed to state a violation

---

[3] "The statute makes it unlawful to offer, provide or otherwise traffic in described technology. To 'traffic' in something is to engage in dealings in it, conduct that necessarily involves awareness of the nature of the subject of the trafficking. To 'provide' something, in the sense used in the statute, is to make it available or furnish it. To 'offer' is to present or hold it out for consideration. The phrase 'or otherwise traffic in' modifies and gives meaning to the words 'offer' and 'provide.' In consequence, the anti-trafficking provision of the DMCA is implicated where one presents, holds out or makes a circumvention technology or device available, knowing its nature, for the purpose of allowing others to acquire it." <u>Reimerdes</u>, 111 F. Supp. 2d at 325.

of the CCA or the DMCA, it also fails to state a civil conspiracy claim in Count VI.

There is an issue regarding Count III, however, that the court raises sua sponte. Count III alleges a violation of § 1201(b)(1) of the DMCA, which is quoted <u>supra</u>. Section 1201(b)(1) prohibits trafficking in devices that are used to circumvent protection afforded by technological measures that effectively protect a right of a copyright owner. Section 1201(b)(2) states that "a technological measure 'effectively protects a right of a copyright owner . . .' if the measure, in the ordinary course of its operation, prevents, restricts, or otherwise limits the exercise of a right of a copyright owner." This definition of effective protection is nonsensical in that it would produce a result that appears to be at odds with the intentions of Congress; it defines protection as something that would limit a copyright owner's rights! The statute needs an additional phrase to the effect that a technological measure effectively protects a copyright owner's rights if the measure "prevents, restricts, or otherwise limits *the opportunity to interfere with* the exercise of a right of a copyright owner." (This issue of faulty statutory language does not affect the DMCA claim in Count II; § 1201(a)(2) does not involve the concept of effective protection.)

We will set a status hearing to discuss this issue. It may be that plaintiff would consider dismissing Count III voluntarily, as

it already has a DMCA claim in Count II that is not affected by this problem.

### c. __Unjust Enrichment (Count IV)__

ITP contends that Comcast has failed to state an unjust enrichment claim essentially because the facts alleged in the Second Amended Complaint do not fit the typical unjust enrichment framework. ITP's characterization of a proper unjust enrichment claim is too narrow. "A claim for unjust enrichment exists when a defendant (1) receives a benefit, (2) to the plaintiff's detriment, and (3) the defendant's retention of that benefit would be unjust." TRW Title Ins. Co. v. Security Union Title Ins. Co., 153 F.3d 822, 828 (7th Cir. 1998) (citing HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc., 545 N.E.2d 672, 679 (Ill. 1989)). Comcast alleges that ITP participated in a scheme to distribute cable-piracy devices and thereby profited, to Comcast's detriment, and that ITP's retention of the profits would be unjust. This is sufficient to state an unjust enrichment claim. Therefore, the motion to dismiss Count IV will be denied.

### d. __Constructive Trust (Count V)__

In Count V, Comcast seeks the imposition of a constructive trust. ITP argues, correctly, that a constructive trust is not a cause of action, but rather an equitable remedy and thus cannot stand as a separate claim. See Fujisawa Pharm. Co. v. Kapoor, 16 F. Supp. 2d 941, 952 (N.D. Ill. 1998). Therefore, Count V will be

dismissed. Comcast may still attempt to prove, however, that a constructive trust would be an appropriate *remedy* for any of its claims (most likely for the unjust enrichment claim, which is the usual basis for the imposition of a constructive trust). See id.

### CONCLUSION

Defendant Carlos Garcia's motion for reconsideration of our Order of January 26, 2005 is denied. Defendant Internet Traffic Pros, Inc.'s motion to dismiss the Second Amended Complaint is granted as to Count V and denied as to Counts I, II, III, IV, and VI. Plaintiff is directed to file, by May 6, 2005, a Third Amended Complaint that contains a proper jurisdictional statement.

A status hearing is set for May 11, 2005, at 11:00 a.m., to discuss the matter set forth supra with respect to the statutory language involved in Count III.


DATE:      April 21, 2005


ENTER:     _____
           John F. Grady, United States District Judge